## THE CHICAGO.

### (District Court, S. D. New York. April 5, 1900.)

COLLISION—FERRYBOAT AND TUG—EVIDENCE CONSIDERED.

> Evidence *held* to place the fault for a collision between a ferryboat passing out of her slip in North river and the tow of a tug passing down the river upon the tug, for coming down so near the piers that the vessels could not see each other until immediately before the collision, on account of the obstruction of the view by a shed on one of the piers.

In Admiralty. Libel for collision.

James J. Macklin, for libelant.
H. Galbraith Ward, for respondent.

BROWN, District Judge. About 7 o'clock in the morning of December 4, 1897, the ferryboat Chicago, as she emerged from her slip at Cortlandt street, North river, bound for Jersey City, came in contact with and damaged a car float on the port side of Central tug No. 20, going down river near the piers against the flood tide. The principal point in controversy is the distance of the float from the New York piers at the time of collision.

Starin's pier (No. 13), about 600 feet long and some 50 or 75 feet above the ferry slip, is covered by a shed, except at the very end, which obstructs the view of vessels coming down from above near the shore. The witnesses on both sides agree that neither of the vessels was seen by the other until the ferryboat was coming out from under Starin's pier, when the float was nearly abreast of it, except that the pilot on No. 20 saw the smokestack of the ferryboat over the shed moving outward some little time before the hull became visible. The pilot of No. 20 testifies that as soon as the ferryboat stopped blowing her slip whistle and before she was visible, except her smokestack, he gave her a signal of one whistle, being then off the upper part of Starin's pier; that he heard a signal of one whistle, which he took to be a reply from the Chicago, and, therefore, continued on, expecting the Chicago to go under his stern; but that the ferryboat, coming out without stopping, came into collision, as above stated, at a distance of about 300 feet outside of

the end of Starin's pier. The witnesses from the ferryboat testify that no whistle was given on No. 20 until she became visible, as the Chicago got nearly at the end of Starin's pier. The pilot of the sister ferryboat Washington coming in, who had stopped 600 or 800 feet outside of the slip, says this signal was not given until just before the collision, and that the collision was about 50 feet outside of Starin's pier, and about 30 feet below it. One witness for the defendant, above Starin's pier, says that at the time of collision he could see clear water between Starin's pier and the ferryboat, which, if true, would indicate that she was more than 200 feet outside of that pier. The weight of evidence, however, is I think that No. 20 was coming down considerably nearer the pier than this last testimony would indicate. Had she been 300 or 400 feet outside of that pier, as the defendant contends, No. 20 and the ferryboat must have been visible to each other when the ferryboat was considerably inside of Starin's pier and when No. 20 must have been considerably to the northward of that pier, as a map of the locality very manifestly shows. As both sides agree that the vessels were not visible to each other in that situation, nor until they were very much nearer each other, it follows of necessity that No. 20 must have been much nearer the pier than her witnesses admit.

That was really the cause of the accident, and for this No. 20 is alone to blame. I do not doubt that No. 20 heard the signal of one whistle, which she took to be an answer to one given by herself; but the evidence is also clear that the Washington, which had stopped outside and a little below, first gave the signal of one whistle to the Chicago as the latter was coming out of the slip; and that the Chicago gave one whistle as an answer to the Washington's signal, but gave no single whistle to No. 20. The confirmation of the Chicago's account of the whistles between the Washington and the Chicago is so strong, that I cannot reject it; and it follows that the supposition by No. 20 that the Chicago gave her an answer of one whistle was a mistake. This mistake in the understanding of the whistles arose from the fault of No. 20 in coming down out of sight so near the piers, and was at her risk. The Chicago is in no way to blame for not answering a signal of one whistle, given, as alleged by No. 20, before the Chicago had got out of the slip far enough to see No. 20, or to know by what vessel or from what situation or for what purpose such a signal might have been given, or in which direction the vessel giving it was moving.

Libel dismissed, with costs.